```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
OCEAN STAR MARITIME CO.,                 :
                 Plaintiff,              :
                                         :
         -v-                             :    09 CIV. 5318 (DLC)
                                         :
PAC ASIA MINERAL AND MANAGEMENT          :    OPINION & ORDER
CORPORATION,                             :
                 Defendant.              :
                                         :
---------------------------------------- X
```

Appearances:

For the Plaintiff:
Kevin J. Lennon
Colleen A. McEvoy
Lennon, Murphy & Lennon, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, New York, 10170


DENISE COTE, District Judge:

Plaintiff Ocean Star Maritime Co. ("Ocean Star") moves for reconsideration of the denial of its application for an ex parte maritime attachment. For the following reasons, the motion is denied.

Background

The following facts are based on Ocean Star's June 8, 2009 verified complaint. On October 23, 2007, a vessel ("Vessel") owned by Ocean Star loaded lateritic nickel ore in the Phillipines, and set sail for China. That same day, the Vessel

ran aground.  Ocean Star immediately entered an agreement with non-parties to refloat the Vessel and salvage the cargo.  As part of these salvage services, some portion of the cargo was lightened from the Vessel and placed in storage on barges ("Off-Loaded Cargo").  The Vessel was refloated over a month later, on November 29, 2007, and it set sail for China with the remainder of the original cargo aboard.  The Off-Loaded Cargo was never loaded back onto the Vessel; it was left behind in storage on the barges.  On December 5, 2007, Ocean Star purchased the Off-Loaded Cargo from the original cargo owners for resale.

This case is about a contract Ocean Star made to sell the Off-Loaded Cargo from the barges to a local buyer.  By the time Ocean Star purchased the Off-Loaded Cargo, it had been sitting on the barges for over a month.  After buying the Off-Loaded Cargo, Ocean Star left it on the barges for another three months while searching for a buyer.  On March 13, 2008, Ocean Star sold the Off-Loaded Cargo for $1 to defendant Pac Asia Mineral and Management Corporation ("Pac Asia"), a company based in the Phillipines.  Under the contract, title to the Off-Loaded Cargo passed from Ocean Star to Pac Asia.  Upon payment, Pac Asia became responsible for organizing a "safe place of delivery," and for "all costs associated with the storage, collection, and discharge of the cargo in the barges."  The contract did not specify where Pac Asia would take the Off-Loaded Cargo or how.

It only warranted that Pac Asia would "provide all necessary license[s], approvals, authorizations or permits required to bring the cargo ashore."  Ocean Star made available to Pac Asia "standby, tugs, personnel and equipment" to complete discharge of the cargo free of charge for seven days after execution of the contract.  Ocean Star alleges that Pac Asia breached its duty under the contract "to promptly arrange for cargo delivery and discharge."

Ocean Star sued Pac Asia and applied for a maritime attachment on June 8, 2009.  By an Order dated July 8 ("July Order"), the application was denied for "fail[ure] to show the existence of maritime jurisdiction."  It noted that the plaintiff had not proffered that the barge was itself a vessel in navigation or capable of transporting goods through navigable waters.

Ocean Star did not renew its request for an attachment by making any supplemental showing to support jurisdiction. Instead, it filed this motion for reconsideration on July 22.

Discussion

The standard for reconsideration is strict. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be

3

expected to alter the conclusion reached by the court." Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," id., nor may the moving party "advance new facts, issues or arguments not previously presented to the Court." Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (citation omitted). The decision to grant or deny the motion is within the sound discretion of the district court. See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

Ocean Star asserts that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1333. Section 1333 provides that district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. The Supreme Court has established a "conceptual" approach to determining whether maritime jurisdiction lies. Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23 (2004). Under this approach, "[w]hile the precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive," courts "should look to the contract's nature and character to see whether it has reference to maritime service or maritime transactions." Folksamerica Reinsurance Co. v. Clean

4

Water of New York, Inc., 413 F.3d 307, 312 (2d Cir. 2005) (citation omitted).

In Kirby, the Supreme Court addressed the issue of mixed contracts, i.e., contracts that had both sea and land components. The Court stated that in determining whether admiralty jurisdiction is present, the inquiry focuses not on "whether a ship or other vessel was involved in the dispute," or "simply . . . the place of the contract's formation or performance," but on "the nature and character of the contract." Kirby, 543 U.S. at 23-24 (citation omitted). The Court held that admiralty jurisdiction is proper where the "principal objective of a contract is maritime commerce." Id. at 25.

Following this decision, the Second Circuit stated that it "recognize[s] two exceptions to the general rule that 'mixed' contracts fall outside admiralty jurisdiction." Folksamerica, 413 F.3d at 314 (citation omitted). One exception is where "the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract." Id. (citation omitted). The second, modified to take account of Kirby, is where, despite the mixed nature of the contract, "the principal objective of [the] contract is maritime commerce." Folksamerica, 413 F.3d at 315 (citation omitted); accord

Williamson v. Recovery Ltd., 542 F.3d 43, 49 (2d Cir. 2008).[1] Prior to Kirby, the Second Circuit had explained that "[i]f the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293, 302 (2d Cir. 1987) (citation omitted).

Ocean Star first argues that the barges are vessels because they are "capable of being used, as a means of transportation on water." 1 U.S.C. § 3. Ocean Star relies on the contract of sale commitment by Ocean Star to "provide all necessary license, approvals, authorizations or permits required to bring the cargo ashore" and the contract's reference to the fact that "the barges are provided with standby, tugs, personnel and equipment." Read together, these provisions imply that the tugs were necessary to move the barges or other vessels that would be

---

[1] The Second Circuit also noted in Folksamerica that several cases had found that before inquiring into the subject matter of the contract at issue, courts should "first make a threshold inquiry into the subject matter of the dispute." 413 F.3d at 312 (citation omitted). The court noted, however, that the Supreme Court's decision in Norfolk S. Ry. Co. did not engage in this threshold analysis before considering the subject matter of the contract, and thus that there was "uncertainty as to the extent to which this Court's 'threshold inquiry' test survives" that decision. Folksamerica, 413 F.3d at 313. This uncertainty need not be resolved in this case. As discussed further below, the subject matter of the contract at issue is not principally maritime and therefore admiralty jurisdiction is not triggered.

utilized in the process of bringing the Off-Loaded Cargo ashore. Because the plaintiff has chosen not to supplement the factual record, however, the location of the barges, their ability to navigate, and the purpose of the tugs remains unclear.

Recent authority suggests that the term "vessel" can be applied generously and, with an adequate showing, that the barges may qualify as vessels so long as they are capable of being used as a means of transportation on water, as opposed to being permanently moored or otherwise rendered incapable of transportation.  See Stewart v. Dutra Constr. Co., 543 U.S. 481, 493-94 (2005) (referring to 1 U.S.C. § 3 in finding that a dredge and scow that had a limited ability to move itself was a vessel for the purposes of the Longshore and Harbor Worker's Compensation Act); Uzdavines v. Weeks Marine, Inc., 418 F.3d 138 (2d Cir. 2005) (same).  Ocean Star does not, however, argue that it can make this showing or that even if it did that that fact alone would suffice to establish that the principal objective of the contract was maritime commerce.  Ocean Star argues instead, and quite correctly, that "there is no requirement" that a barge be a "vessel" in order for maritime jurisdiction to exist.

Ocean Star turns next to an analysis of the terms of the contract to find the existence of a maritime contract.  Ocean Star acknowledges that the contract at issue is a mixed contract, and that the portion of the contract providing for the

7

change in title and ownership of the Off-Loaded Cargo is non-maritime.  Its principal argument in support of a finding of maritime jurisdiction is that the contract provision relating to the storage, discharge and delivery of the Off-Loaded Cargo relates to "marine cargo," because the Off-Loaded Cargo had been transported, albeit in the past and only briefly, through navigable waters.  Ocean Star contends that, since the cargo had previously entered the maritime stream of commerce, maritime jurisdiction exists.  This argument proves too much.

Although the Off-Loaded Cargo had once traveled by sea on the Vessel, albeit for less than a day, Ocean Star did not own the Off-Loaded goods at that time; nor does this contract purport to have governed the Off-Loaded Goods during that time. Ocean Star did not purchase the Off-Loaded Cargo until after the Off-Loaded Cargo had been sitting in storage on barges for over a month.  After Ocean Star purchased the Off-Loaded Cargo, it remained on the barges for another three months before the contract at issue was executed.  The contract at issue involves only the sale of the Off-Loaded Cargo from barges to a local buyer.  If the principle that Ocean Star advances were adopted, it could apply to any goods that had once traveled by sea.  The fact that goods had once traveled by sea under different contractual arrangements does not *ipso facto* make any subsequent contract for their sale and transportation a maritime contract.

Nor does the contract here suggest or govern the future transportation of the Off-Loaded Cargo by sea.  There is no indication whatsoever of the final destination for these goods, much less their mode of transportation for reaching that destination.

Finally, Ocean Star argues that the parties "understood" the contract was a maritime contract since the buyer assumed all the obligations, risks, and costs relating to the storage, discharge and delivery of the Off-Loaded Cargo at a time when it was stored "aboard barges on navigable waters."  Relying on the reasoning in Ingersoll, 829 F.2d at 302, Ocean Star argues that because of the buyer's assumption of these obligations, the contract "related to a ship in its use as such and related to commerce and related to transportation by sea," rendering the contract a maritime contract.  (Emphasis in original.)  There are many layers of problems with this argument.  First, there is no proof offered of the parties' understanding or any legal authority cited to support the proposition that the parties' understanding could create maritime jurisdiction.  Next, Ocean Star has not shown that the barges were "on navigable waters." Moreover, this contract does not relate to the goods' prior transportation by ship or transportation by sea.  Nor does Ingersoll assist Ocean Star.  Ingersoll held that a freight forwarding contract that encompassed the duty of properly

9

loading cargo onto a vessel that would transport the goods by sea was a maritime contract.  Id. at 302-03.  Ocean Star has not pointed to comparable duties that the buyer engaged to undertake.

As such, the storage on and removal from barges is not enough to give this contract the "genuinely salty flavor" that might otherwise support maritime jurisdiction.  Kirby, 543 U.S. at 22 (citation omitted); see also Optimum Shipping & Trading, S.A. v. Prestige Marine Svcs PTE. Ltd., No. 08 Civ. 9533 (JSR) 2009 WL 497341, *1 (S.D.N.Y. Feb. 26, 2009) (not reaching the issue of whether the "nature and character" of a contract for sale of a vessel "to be used merely as a floating warehouse" gives rise to maritime jurisdiction, but commenting that such a vessel "may well . . . lack[] the genuinely salty flavor that would otherwise favor the recognition of maritime jurisdiction.") (citation omitted).  Since the principal objective of the contract at issue here was simply the sale of the Off-Loaded Cargo, no maritime jurisdiction exists.

Conclusion

Ocean Star's July 22 motion for reconsideration is denied.

The Clerk of Court shall close this case.

SO ORDERED:

Dated:   New York, New York
         August 12, 2009

                                    _____
                                            DENISE COTE
                                    United States District Judge